## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

SHARED MEDICAL SYSTEMS CORP.,    *
                                              *

      Plaintiff    *

                                              *    Civil No. 97-2175 (SEC)

      v.    *

                                              *    ACTION FOR BREACH OF

ASHFORD PRESBYTERIAN    *    CONTRACT

COMMUNITY HOSPITAL, INC.    *

                                              *

      Defendant    *

*************************************

### OPINION AND ORDER

This is a diversity suit for breach of contract under Commonwealth law, filed by plaintiff Shared Medical Systems Corporation ("SMS") against Ashford Presbyterian Community Hospital ("Ashford"), Inc. Plaintiff seeks $1,811,642.56 in damages for the breach of a computer services and maintenance agreement. Pending before the Court is a motion for summary judgment filed by defendant Ashford **(Docket # 9)**, which was duly opposed by the plaintiff **(Docket # 12)**.[1]

In essence, Ashford claims that the contract sought to be enforced through this action ("The Written Agreement"), should be annulled because defendant's consent was vitiated as a result of deceit and error induced upon it by SMS' alleged machinations or misrepresentations. Ashford also claims that the written agreement was voided or cancelled through a subsequent verbal agreement ("The Verbal Agreement"). Ashford argues that through this verbal agreement, the parties modified their contractual relationship, thereby cancelling the contested written agreement.

On the other side, SMS claims that Ashford had enough time to consider the terms of the written agreement before signing it, and that SMS consultants were available for consultation in

---

[1]    Ashford also filed a reply brief **(Docket # 23)**, which was considered in the disposition of its motion for summary judgement.

regards to the terms of such agreement.   SMS denies any misrepresentation or dishonesty on its

behalf.  SMS also claims that the written agreement was clear and unambiguous on its terms and that

it expressly provided that termination before the agreed date had to be made by "written agreement

executed by an authorized representative" of each party.   In regards to the verbal agreement

purportedly reached by the parties on July 15, 1994, SMS alleges that it merely consisted of an

accommodation made to Ashford to help it while it was experiencing financial hardship. In essence,

SMS alleges that it agreed to the postponement of the kick-off date for the delivery of the new

computer software, but never to the contract's cancellation.

**Factual Background**

Plaintiff Shared Medical Systems Corp. ("SMS") is a corporation organized under the laws

of the state of Delaware with its principal office and place of business in the state of Pennsylvania.

Defendant Ashford Presbyterian Community Hospital, Inc. ("Ashford") is a corporation organized

under the laws of the Commonwealth of Puerto Rico with its principal office and place of business

in San Juan, Puerto Rico.  SMS is engaged in the business of providing hospitals with computer,

education, consultation and engineering services, including information software systems used by

the hospitals for the management of clinical and financial information.  Ashford operates a health

care facility in San Juan, Puerto Rico, known as the Ashford Presbyterian Community Hospital.

On December 28, 1993, SMS and Ashford entered into an agreement ("the written

agreement"), providing for the acquisition by Ashford of computer processing services utilizing the

INVISION SYSTEM Remote Computing Option ("RCO") recommended by SMS, and for

upgrading and extending Ashford's use of the UNITY system then being used at the hospital. The

terms of the contract provided for Ashford's acquisition of: (1) the Invision Base Systems Version

22.0 applications, (2) the Results Reporting System Invision applications, (3) an upgrade of the Unity Software by implementing version 22.0 of such software application, (4) the Invision RCO equipment, and (5) the Unity LAN Version 22.0 upgraded equipment.

This agreement superseded in its entirety two previous agreements between the parties: (1) the Exact Clinical Management System Lease Agreement dated September 30, 1988, and (2) the SMS Financial Management Information Services contract, dated June 1, 1988, under which Ashford received Unity processing services and software licenses.

Shortly after entering into the written agreement on December 28, 1993, Ashford realized that it was unable to pay for the services and software licenses acquired, as stipulated under the written agreement. Ashford made efforts to postpone the time for implementing the terms of the contract and to this end, it contacted SMS officers Edgin and Macaleer. On July 15, 1994 Ashford officers Dr. Rafael Longo, Angel Herrera, Dr. Belisario Matta, Iván Colón, and Minerva Mendez, met with Messrs. Jeff Edgin and Julio Navarro from SMS. At this meeting the parties apparently agreed to delay the June 30, 1996 delivery date specified in the Invision/Unity Agreement due to Ashford's financial difficulties. SMS agreed to remain open for renegotiation of a new contract to potentially substitute the Invision/Unity Agreement, and it assumed the obligation of working with Ashford to assure that the payment levels to SMS did not exceed the then current levels under the previous agreement. Meanwhile, the contractual relationship between the parties continued on a month by month basis, while the execution of the written agreement was suspended indefinitely. However, it is unclear whether at this meeting the written agreement itself was cancelled or its execution was simply postponed.

This was the situation between the parties when in June of 1996 Ashford entered into a

contract with Meditech, one of SMS competitors, for the license, installation, and implementation of its hospital information software system. SMS was not notified of Ashford's intention to switch companies, nor was it asked for a competitive offer, or petitioned for a renegotiation of the Invision/Unity written agreement. On October 18, 1996, Mr. Julio Navarro from SMS called for a meeting with Minerva Meléndez, Ashford's comptroller, but instead he was referred to Dr. Belisario Matta, a member of Ashford's Board of Directors, President of the MIS ad hoc committee and Medical Director of the Hospital. It was then that Dr. Belisario Matta first notified Mr. Navarro of Ashford's contract with Meditech. Dr. Matta also told him that Ashford would notify SMS thirty days in advance of the cut off-date for SMS services. After this, SMS for the first time charged Ashford with breach of the written contract and demanded its execution. When Ashford refused to comply, plaintiff SMS initiated this civil action to recover damages sustained as a result of the breach.

### Summary Judgment

The First Circuit has recently noted: "[s]ummary judgment has a special niche in civil litigation. Its role is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts University School of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 113 S.Ct. 1845 (1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money and permitting courts to husband scarce judicial resources. McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).

According to Fed. R. Civ. P. 56(c), a summary judgment motion should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also* NASCO, Inc. v. Public

Storage, Inc., 29 F.3d 28 (1st Cir. 1994). It is not enough to conjure up an alleged factual dispute

between the parties; to defeat summary judgment, there must exist a genuine issue of material fact.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

For a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier

of fact to resolve the issue in favor of the non-moving party. U.S. v. One Parcel of Real Property,

960 F.2d 200, 204 (1st Cir. 1992). *See also*, Boston Athletic Assn. v. Sullivan, 867 F.2d 22, 24 (1st

Cir. 1989). By like token, "material" means that the fact is one that might affect the outcome of the

suit under the governing law. Morris v. Government Development Bank of Puerto Rico, 27 F.3d 746,

748 (1st Cir. 1994).

In determining whether to grant summary judgment, the Court may not, however, weigh the

evidence. Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668 (1st Cir. 1994).

Summary judgment "admits of no room for credibility determinations, no room for the measured

weighing of conflicting evidence such as the trial process entails." *Id.* (*citing* Greenburg v. Puerto

Rico Maritime Shipping Authority, 835 F.2d 932, 936 (1st Cir. 1987). Accordingly, if the facts

permit more than one reasonable inference, the court on summary judgment may not adopt the

inference least favorable to the non-moving party. Casas Office Machines, 42 F.3d at 684.

The nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric

and bare conclusions." Lawton v. State Mutual Life Assurance Company of America, 101 F.3d 218,

223 (1st Cir. 1996). Furthermore, "'the nonmovant must produce specific facts, in suitable

evidentiary form' sufficient to limn a trialworthy issue... Failure to do so allows the summary

judgment engine to operate at full throttle." *Id.*; *see also* <u>Kelly</u> v. <u>United States</u>, 924 F.2d 355, 358

(warning that "the decision to sit idly by and allow the summary judgment proponent to configure

the record is likely to prove fraught with consequence.")

   In this case, there are issues of fact that cannot be disposed of by summary judgement. These

issues are both genuine and material to the outcome of the case. Defendant's motion for summary

judgement raises two defenses to plaintiff's demands for the execution of the Invision/Unity written

agreement: first, that the written contract should be declared null or void because it was signed under

deceit or error induced by the verbal commitments or representations made by SMS employees to

Ashford's staff before the contract was signed by the parties; and second, that the parties later

verbally agreed to cancel or annul the written agreement. Both allegations are contradicted by SMS.

As to the first allegation, SMS correctly notes that it involves issues of subjectivity, intent and state

of mind that do not clearly result from the documents submitted by defendant in support of its

motion. The second allegation concerns a verbal contract which purportedly cancelled the written

agreement. The documents submitted by both parties in support of their version of the verbal

agreement reached on July 15, 1994, consists of sworn statements signed by the corresponding

officers involved on each side of the negotiations. These sworn declarations are contradictory with

regards to the written agreement's alleged cancellation or annulment. In addition, the minutes of the

July 15, 1994 meeting are short and inconclusive and they do not clearly reflect an intent by the

parties to cancel the written agreement. Therefore the court cannot conclude that such intention

existed from the mere extension of the execution date specified in the written contract.

   As previously noted, if the facts permit more than one reasonable inference, the court on

summary judgment may not adopt the inference least favorable to the non-moving party. <u>Casas</u>

**Civil No. 97-2175 (SEC)**                                                          7

Office Machines, 42 F.3d at 684.  Based on the foregoing, defendant's motion for summary

judgment seeking a court's declaration nullifying the written agreement and therefore dismissing this

civil action is hereby **DENIED.**

        **SO ORDERED.**

In San Juan, Puerto Rico, this **25** day of  October, 1999.

                            SALVADOR E. CASELLAS
                            United States District Judge